IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| GASTONIA AIRLINE, LLC,<br><br>Plaintiff<br><br>vs.<br><br>CITY OF GASTONIA, a North Carolina municipal corporation; MICHAEL C. PEOPLES, in his official capacity as City Manager of the City of Gastonia and in his individual capacity; and ATLANTIC LEAGUE OF PROFESSIONAL BASEBALL CLUBS, INC., a Pennsylvania foreign corporation,<br><br>Defendants. | Civil Action No. _____________<br><br>*JURY TRIAL DEMANDED* |

**COMPLAINT**

COMES NOW Plaintiff Gastonia Airline, LLC ("Gastonia Airline" or "GAL"), by and through undersigned counsel, complaining of Defendants City of Gastonia, North Carolina ("City" or "City of Gastonia"), Michael C. Peoples, and The Atlantic League of Professional Baseball Clubs, Inc. ("Atlantic League"), and respectfully shows unto the Court as follows:

## I. NATURE OF THE ACTION

1. This is a civil action for legal, equitable, constitutional, and statutory relief arising out of a retaliatory scheme orchestrated by municipal officials and a minor professional baseball league to perpetrate an illegal and unconstitutional taking, breach of contract, trespass, and commercial sabotage of a multi-million-dollar real estate development project surrounding FUSE Stadium in Gastonia, North Carolina.

2. Plaintiff Gastonia Airline, LLC, is the fee simple record owner of property identified as Parcels A, B, and C surrounding CaroMont Health Park (FUSE Stadium) in the Franklin Urban Sports and Entertainment ("FUSE") District. GAL is the lawful assignee of all property and development rights under a comprehensive Economic Development Agreement ("EDA") dated June 23, 2020. GAL has invested substantial resources in predevelopment, site preparation, and securing a prestigious Marriott International franchise for a 90-key Aloft Hotel on Parcel B (a $20.09 million commercial project) alongside mixed-use and residential developments on Parcels A and C.

3. In late 2023 and continuing throughout 2024 and 2025, Defendant City of Gastonia, acting in unlawful confederation with Defendant Atlantic League, embarked on a scheme to squeeze out the original team operator (NC Gas House Gang LLC) and confiscate GAL's property rights without just compensation. The City physically changed the locks at FUSE Stadium on December 5, 2023, thereby shutting off the sole physical point of ingress and egress to GAL's Parcels A and B. Furthermore, the City and Atlantic League repeatedly committed physical trespass on GAL's Parcel C (the stadium parking lot), using it for staging and public parking, while actively destroying and padlocking GAL's protective barricades erected to secure its land.

4. Plaintiff brings this action to recover compensatory, consequential, constitutional, statutory, treble, and punitive damages, to quiet title to its real property, to obtain injunctive relief, and to hold Defendants fully accountable under the Constitutions of the United States and the State of North Carolina and under 42 U.S.C. §§ 1983 and 1988, N.C. Gen. Stat. §§ 158-7.1, 41-10, and 75-1.1, and North Carolina common law.

## II. PARTIES

5. Plaintiff Gastonia Airline, LLC' ("Gastonia Airline" or "GAL") is a Delaware limited liability company duly organized and existing under the laws of the State of Delaware, with its principal place of business located at 6401 Golden Triangle Drive, Suite 305, Greenbelt, Maryland 20770. GAL is the record fee simple owner of Parcels A, B, and C in Gaston County, North Carolina, and is the assignee of the rights and obligations under the June 23, 2020 Economic Development Agreement.

6. Defendant City of Gastonia ("City" or "City of Gastonia") is a North Carolina municipal corporation organized and existing under the laws of the State of North Carolina, situated in Gaston County, North Carolina. The City acts by and through its City Council, City Manager (Michael Peoples), City Attorney, Police Department, employees, and authorized agents.

7. Defendant Michael C. Peoples resides in Gaston County, North Carolina, and has been appointed by the City Council of the City of Gastonia as the City Manager under N.C. Gen. Stat. § 160A-147. Defendant Peoples is the chief administrator for the City of Gastonia under N.C. Gen. Stat. § 160A-148 and is named as a defendant in his official capacity and in his personal capacity. At all times relevant hereto, Defendant Peoples acted under color of state law.

8. Defendant Atlantic League of Professional Baseball Clubs, Inc. ("Atlantic League") is a foreign corporation organized and existing under the laws of the Commonwealth of Pennsylvania, transacting business in the State of North Carolina. The Atlantic League has not obtained a certificate of authority to do business in North Carolina pursuant to N.C. Gen. Stat. § 55-15-01(a). The Atlantic League may be served through its registered agent or officers.

## III. JURISDICTION AND VENUE

9. This Court has original subject matter jurisdiction over Plaintiff's federal constitutional and civil rights claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) and (4), because this action arises under the Constitution and laws of the United States, specifically the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

10. This Court also has original subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because complete diversity of citizenship exists between Plaintiff (citizen of Delaware) and Defendants (citizens of North Carolina and Pennsylvania), and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

11. This Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367(a) because those claims are so related to the federal constitutional claims in this action that they form part of the same case or controversy under Article III of the United States Constitution.

12. Venue is proper in the United States District Court for the Western District of North Carolina, Charlotte Division, pursuant to 28 U.S.C. § 1391(b)(1) and (2), because Defendants City of Gastonia and Michael Peoples reside within this judicial district, the real property at issue is situated entirely in Gaston County within this district, and a substantial part of the events, acts, and omissions giving rise to the claims occurred within this district. Furthermore, Section 12 of the Economic Development Agreement expressly designates venue in the United States District Court for the Western District of North Carolina.

## IV. FACTUAL BACKGROUND

### *A. The Economic Development Framework*

13. In or about 2017, Defendant City of Gastonia sought to catalyze economic revitalization in a blighted urban area along West Franklin Boulevard, designating the area as the Franklin Urban Sports and Entertainment ("FUSE") District. The central pillar of the City's plan was the construction of a multi-purpose sports and entertainment facility and baseball stadium known as "FUSE Stadium" or "CaroMont Health Park."

14. After encountering multiple failed RFPs and developer rejections, the City engaged in negotiations with Project Velocity, represented by NC Gas House Gang LLC ("NC Gas House Gang"). On June 23, 2020, the City entered into a comprehensive Economic Development Agreement ("EDA") with NC Gas House Gang, pursuant to N.C. Gen. Stat. § 158-7.1.

15. Under the EDA, the City recognized that establishing a professional minor league baseball team in the Atlantic League and developing the real property surrounding the stadium were interdependent, integrated components of a single economic redevelopment model. In Section 2 of the EDA, the Gastonia City Council made formal statutory findings that:

a. Conveying the surrounding real property parcels would generate substantial private commercial, office, retail, residential, and hospitality investments;

b. The economic development incentives provided under the EDA were a material and necessary inducement for Project Velocity to acquire a $3.0 million membership in the Atlantic League, field a professional baseball team (the Gastonia Honey Hunters), and execute a 20-year stadium lease (the Exclusive Use Area Lease Agreement, "EUALA", and Use and Operating Agreement, "UOA"); and

c. The public benefits accruing to the City far outweighed the cost of the land conveyed.

*B. Assignment of Development Rights and Fee Simple Conveyance to Gastonia Airline, LLC*

16. Section 9 of the EDA expressly authorized NC Gas House Gang to assign its rights and obligations under the EDA to an affiliate or assignee.

17. On October 12, 2020, NC Gas House Gang LLC executed a formal 'Assignment and Assumption of Economic Development Agreement' in favor of Plaintiff Gastonia Airline, LLC. Under this instrument, NC Gas House Gang granted, assigned, transferred, and conveyed to GAL all of its right, title, and interest in and to the Properties defined in the EDA, and GAL expressly assumed all property rights and development obligations thereunder.

18. Pursuant to Section 7 and Exhibit B of the EDA and the assignment, the City executed fee simple general warranty deeds conveying record title to the following real property parcels to Fuse Gastonia LLC, which then conveyed them to GAL, in deeds that were duly recorded in the Gaston County Register of Deeds:

a. *Parcel A*: Gaston County Parcel No. 301022, PIN 3545571771 (appraised baseline value $176,000; projected buildout value $2,000,000);

b. *Parcel B*: Gaston County Parcel No. 301023, PIN 3545574809 (appraised baseline value $180,000; projected buildout value $10,000,000); and

c. *Parcel C*: Gaston County Parcel No. 301024, PIN 3545581371 (appraised baseline value $868,000; projected buildout value $8,000,000).

19. GAL thereby became, and remains to this day, the sole record fee simple owner of Parcels A, B, and C, possessing inherent constitutional and common law incidents of land ownership, including the absolute right to exclusive possession, quiet enjoyment, development, and the right to exclude all others.

*C. Gastonia Airline's $20+ Million Predevelopment Investment and Marriott Aloft Hotel Franchise*

20. Following the conveyance, GAL undertook extensive predevelopment activities. GAL paid valuable consideration and successfully acquired a commercial franchise from Marriott International to construct a 90-key 'Aloft Hotel' on Parcel B at CaroMont Health Park.

21. As documented in GAL's formal development master plans, the Aloft Hotel project represented a total capital investment of $20,090,006.00, comprising $15.07 million in senior debt, $1.50 million in CPACE/mezzanine financing, $750,000 in key money, and $2.77 million in direct equity. The projected 10-year exit disposition value of the hotel alone was $23,292,000.00, with a net profit of $7,290,890.00 and a 3.63x equity multiple.

22. In addition to the Aloft Hotel on Parcel B, GAL formulated architectural and site development plans for high-density residential and commercial mixed-use projects on Parcels A and C, projecting combined property assessments exceeding $20.0 million and generating over $1.44 million in incremental tax revenues for the City. In particular, GAL undertook to plan for development consisting of 151 units of apartments, with an estimated cost of approximately $36-$38 million, yielding $1.6-1.8 million of operating income per year.

*D. The City and Atlantic League's Unlawful Conspiracy, Lockout, and Contract Sabotage*

23. Field operations for the Gastonia Honey Hunters commenced in 2021 upon stadium completion. Despite initial financial strain caused by the COVID-19 pandemic and an accelerated 9-month startup timeline, the team achieved tremendous athletic success on the field in 2022 and 2023.

24. In May 2023, Defendant City of Gastonia and Defendant Atlantic League, acting through its President Richard E. "Rick" White, pre-emptively conspired to seize NC Gas House Gang's $3.0 million team franchise and nullify the 20-year stadium lease without compensation.

White actively interfered with team operations, poached staff, and defamed NC Gas House Gang to vendors.

25. To resolve operational debts, NC Gas House Gang secured an angel investor who placed nearly $1.0 million into an escrow account and obtained two binding Letters of Intent from prospective buyers: a $3.0 million offer from Zawyer Sports, LLC (October 18, 2023) and a $4.0 million offer from BCG Sports and Entertainment, LLC' (October 29, 2023).

26. Driven by bad faith and a desire to usurp the franchise, Defendant Atlantic League summarily rejected the BCG Sports $4.0 million offer, ignored the $1.0 million escrow funds, and, on Sunday, November 12, 2023, gave 24 hours' notice of a board meeting where it unlawfully terminated NC Gas House Gang's league membership on November 13, 2023.

27. Two days later, on November 15, 2023, the City issued a pretextual "Final Notice" purporting to terminate the EUALA and UOA—without ever providing the mandatory 90-day written notice and cure period mandated by Section 10 of the EDA. On December 5, 2023, the City took the law into its own hands, changing all physical locks at FUSE Stadium and executing a total physical lockout. Shortly thereafter, the City installed Zawyer Sports to operate the stadium under drastically reduced financial terms (waiving the $3.0 million franchise fee and cutting stadium rent by 50%).

*E. City's Interference with GAL's Property Rights, Access Blockade, and Trespass on Parcel C*

28. The City's illegal stadium lockout directly infringed upon GAL's independent real property rights. Parcels A and B are landlocked parcels surrounded on three sides by Parcel D (the City-owned stadium grounds). The fourth side of Parcels A and B is enclosed by an iron metal fence separating them from the public street. Consequently, the only physical access to

Parcels A and B is through the stadium gates. By changing the stadium locks, the City physically blocked GAL, its officers, contractors, and engineers from accessing Parcels A and B.

29. Furthermore, the City and Zawyer Sports repeatedly committed physical trespass on GAL's Parcel C (the 1.5-acre parking lot), using it for stadium staging, contractor storage, and public event parking without GAL's permission or compensation.

30. GAL, through its attorneys, served formal written Cease and Desist notices on the City and Zawyer Sports on April 24, 2024, July 24, 2024, May 29, 2025, and June 9, 2025. GAL demanded that the City immediately remove the wall/fence blocking street access to Parcels A and B, surrender stadium keys, and cease trespassing on Parcel C.

31. On April 25, 2024, GAL contracted with National Rent-A-Fence to install heavy protective barricades at the entrances of Parcel C to exclude trespassers. City employees actively interfered by sending Gastonia Police Department officers to intimidate the contractors. When the contractors completed installation and left, City employees immediately dismantled the barricades, dragged them to a corner of the lot, and chained/padlocked them together so the City could continue using Parcel C for unauthorized public parking.

32. On May 29, 2025, GAL notified the City that contractors were scheduled to enter Parcels A and B on June 9, 2025, to install construction fencing, perform soil test borings, and commence clearing. In a reply dated June 4, 2025, and GAL's response dated June 9, 2025, the City flatly refused to permit physical access through the stadium, illegally conditioning land access on GAL's submission to disputed EDA terms.

## V. CLAIMS FOR RELIEF

### COUNT I

*Breach of Contract — Economic Development Agreement and Assignment*
(Plaintiff Gastonia Airline, LLC against Defendant City of Gastonia)

33. GAL realleges and incorporates Paragraphs 1 through 32 as if fully set forth herein.

34. The June 23, 2020 Economic Development Agreement ("EDA") constitutes a valid, binding, and enforceable contract under N.C. Gen. Stat. § 158-7.1 between the City and NC Gas House Gang. Pursuant to Section 9 of the EDA and the October 12, 2020 Assignment, GAL validly acquired all property, development, and contractual rights under the EDA.

35. GAL fully performed all of its obligations under the EDA, or such performance was rendered impossible, excused, or waived by the City's wrongful acts.

36. Defendant City of Gastonia breached the EDA and Assignment by, *inter alia*:

a. Refusing to recognize and honor GAL's assigned development rights;

b. Physically locking the gates of FUSE Stadium on December 5, 2023, thereby severing GAL's sole physical access to Parcels A and B;

c. Refusing to permit GAL, its contractors, and engineers to enter Parcels A and B in June 2025 to perform geotechnical test borings, fencing, and clearing;

d. Attempting to unilaterally terminate the EDA without providing the mandatory 90-day written notice and cure period required by Section 10;

e. Unlawfully trespassing upon Parcel C and encouraging municipal contractors and the public to use Parcel C for stadium parking; and

f. Destroying and padlocking GAL's protective barricades on Parcel C.

37. The City entered into the EDA in a proprietary and contractual capacity pursuant to N.C. Gen. Stat. § 158-7.1 and has waived any claim of municipal or governmental immunity.

38. As a direct and proximate result of the City's breaches, GAL has suffered substantial compensatory and consequential damages, including lost development profits,

predevelopment expenditures, carrying costs, and diminution in land value, in an amount to be proven at trial exceeding $75,000.00.

**COUNT II**

*Breach of the Implied Covenant of Good Faith and Fair Dealing*
(Plaintiff Gastonia Airline, LLC against Defendant City of Gastonia)

39. GAL realleges and incorporates Paragraphs 1 through 38 as if fully set forth herein.

40. Under North Carolina law, every valid contract contains an implied covenant of good faith and fair dealing providing that neither party will do anything that injures or destroys the right of the other party to receive the benefits of the agreement.

41. Defendant City of Gastonia breached this implied covenant by engaging in a malicious, bad-faith course of conduct designed to destroy GAL's economic bargain under the EDA, including conspiring with the Atlantic League to terminate the underlying baseball franchise, executing a physical lockout at FUSE Stadium, blocking access to Parcels A and B, vandalizing and converting GAL's barricades on Parcel C, and procuring the retaliatory arrest of GAL's corporate representative.

42. As a direct and proximate result of the City's breach of the implied covenant of good faith and fair dealing, GAL has sustained severe economic damages in an amount to be proven at trial exceeding $75,000.00.

**COUNT III**

*Unconstitutional Taking Without Just Compensation*
*(42 U.S.C. § 1983; Fifth and Fourteenth Amendments)*
(Plaintiff Gastonia Airline, LLC against Defendants City of Gastonia and Peoples)

43. GAL realleges and incorporates Paragraphs 1 through 42 as if fully set forth herein.

44. GAL possesses constitutionally protected property interests in fee simple title to Parcels A, B, and C, as well as vested rights under the EDA.

45. Defendants City of Gastonia and Peoples, acting under color of state law and pursuant to official municipal policy, custom, and decision, committed an unconstitutional physical and regulatory taking of GAL's property without just compensation in violation of the Takings Clause of the Fifth Amendment, as applied to municipalities through the Fourteenth Amendment, by:

a. Physically locking the gates of FUSE Stadium on December 5, 2023, completely blocking all physical ingress and egress to landlocked Parcels A and B;

b. Physically occupying, commandeering, and converting Parcel C for public event parking and municipal staging without GAL's consent; and

c. Depriving GAL of all economically beneficial use of its $20.09 million Aloft Hotel development and surrounding mixed-use projects.

46. GAL is entitled to bring this § 1983 takings claim directly in federal court.

47. As a direct and proximate result of the City's and Peoples' unconstitutional taking, GAL has suffered actual damages exceeding $10,000,000.00, for which it is entitled to just compensation, interest, costs, and reasonable attorney's fees pursuant to 42 U.S.C. § 1988.

**<u>COUNT IV</u>**

*Deprivation of Property Without Due Process of Law*
*(42 U.S.C. § 1983; Fourteenth Amendment)*
(Plaintiff Gastonia Airline, LLC against Defendant City of Gastonia)

48. GAL realleges and incorporates Paragraphs 1 through 47 as if fully set forth herein.

49. GAL possesses constitutionally protected property interests in its fee simple land title and vested EDA development rights.

50. Defendant City of Gastonia, acting under color of state law, intentionally deprived GAL of these protected property interests without constitutionally adequate notice, hearing, or procedural due process, by arbitrarily locking out land access, severing contractual rights, and seizing land use through brute municipal force.

51. As a direct and proximate result, GAL is entitled to compensatory damages, declaratory relief, costs, and attorney's fees under 42 U.S.C. § 1988.

## **COUNT V**

*Trespass to Real Property & Action to Quiet Title (N.C. Gen. Stat. § 41-10)*
(Plaintiff Gastonia Airline, LLC against Defendant City of Gastonia)

52. GAL realleges and incorporates Paragraphs 1 through 51 as if fully set forth herein.

53. GAL is the lawful fee simple owner in actual and constructive possession of Parcel C (PIN 301024).

54. Defendant City of Gastonia, without authorization, consent, or legal justification, intentionally committed physical trespass on Parcel C by directing contractors and public attendees to park on the lot, removing GAL's barricades, and padlocking GAL's property.

55. Furthermore, the City's adverse claims cloud GAL's title. GAL is entitled to an order under N.C. Gen. Stat. § 41-10 quieting title to Parcels A, B, and C in GAL and enjoining the City from further trespass.

56. GAL is entitled to compensatory damages for trespass, statutory costs, and injunctive relief.

## COUNT VI

*Tortious Interference with Contractual Relations & Conversion*
(Plaintiff Gastonia Airline, LLC against Defendants City of Gastonia and Atlantic League)

57. GAL realleges and incorporates Paragraphs 1 through 56 as if fully set forth herein.

58. Valid, binding contracts existed between GAL and third parties, including Marriott International (Aloft Hotel franchise agreement), National Rent-A-Fence, event producers, and commercial vendors.

59. Defendants City of Gastonia and Atlantic League had actual knowledge of these contractual relationships.

60. Defendants intentionally, maliciously, and without legal justification induced third parties to breach or abandon these contracts and converted stadium revenues and land use benefits belonging to GAL.

61. Defendants acted with actual malice, willful and wanton disregard, and outrageous misconduct, entitling GAL to compensatory damages, punitive damages, and costs.

## COUNT VII

*Tortious Interference with Prospective Business Relations / Economic Advantage*
(Plaintiff Gastonia Airline, LLC against Defendants City of Gastonia and Atlantic League)

62. GAL realleges and incorporates Paragraphs 1 through 61 as if fully set forth herein.

63. GAL maintained concrete, highly probable prospective business relationships with Marriott International, hotel equity investors, lenders (senior debt $15.06M), construction contractors, and commercial buyers (including the $4.0M BCG Sports acquisition).

64. Defendants City of Gastonia and Atlantic League knew of these prospective relationships and intentionally, maliciously interfered with them, destroying GAL's $20.09M Aloft Hotel development and team sale.

65. But for Defendants' unjustified interference, GAL would have consummated these transactions and realized net profits exceeding $7.29 million on the hotel project and $4.0 million on the team sale.

66. GAL is entitled to compensatory damages exceeding $11,000,000.00, punitive damages, and statutory costs.

## **COUNT VIII**

*Unfair and Deceptive Trade Practices (N.C. Gen. Stat. § 75-1.1)*
(Plaintiff Gastonia Airline, LLC against Defendant Atlantic League)

67. GAL realleges and incorporates Paragraphs 1 through 66 as if fully set forth herein.

68. Defendant Atlantic League engaged in commercial conduct in and affecting commerce in North Carolina within the meaning of N.C. Gen. Stat. § 75-1.1.

69. The Atlantic League's acts—including executing a predatory scheme to seize the Gastonia franchise without compensation, rejecting the $4.0M BCG Sports offer, violating notice rules, and conspiring to lockout GAL—were immoral, unethical, oppressive, unscrupulous, and substantially injurious.

70. Pursuant to N.C. Gen. Stat. § 75-16, GAL is entitled to recover treble damages in an amount exceeding $33,000,000.00, together with reasonable attorney's fees under N.C. Gen. Stat. § 75-16.1.

## VI. MUNICIPAL LIABILITY, IMMUNITY WAIVER, & PUNITIVE DAMAGES

71. *Waiver of Governmental Immunity*: Defendant City of Gastonia has contracted for and purchased local government risk pool coverage and commercial general liability insurance policies, thereby waiving governmental immunity pursuant to N.C. Gen. Stat. § 160A-485 and N.C. Gen. Stat. § 153A-435 to the extent of such coverage. Furthermore, governmental immunity is inapplicable to contract claims, constitutional takings, and federal § 1983 causes of action.

72. *Inapplicability of Public Official Immunity*: Defendant Peoples is not protected by public official immunity under North Carolina common law because his acts were committed with actual malice, corruption, bad faith, intentional ill will, and outside the scope of lawful authority.

73. *Punitive Damages*: The acts of Defendant Peoples and of Defendant Atlantic League were committed willfully, wantonly, maliciously, and with reckless, callous indifference to Plaintiff's rights, warranting punitive damages under 42 U.S.C. § 1983 and N.C. Gen. Stat. § 1D-1, *et seq.*

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Gastonia Airline, LLC respectfully prays that this Court grant the following relief:

1. Enter judgment in Plaintiff's favor and against Defendants on each count in this Complaint;
2. Award compensatory and consequential damages against Defendants City of Gastonia, Peoples and Atlantic League, jointly and severally, in an amount to be determined by a jury exceeding $75,000.00;

3. Award treble damages against Defendant Atlantic League, pursuant to N.C. Gen. Stat. § 75-16, in an amount exceeding $75,000.00;
4. Award Plaintiff punitive damages against Defendants Peoples and Atlantic League, pursuant to 42 U.S.C. § 1983 and N.C. Gen. Stat. Chapter 1D in an amount to be determined by a jury;
5. Award Plaintiff just compensation for the unconstitutional physical and regulatory taking of its property under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 19 of the North Carolina Constitution;
6. Issue preliminary and permanent injunctions restraining Defendants City of Gastonia and Peoples from blocking access to Parcels A and B, trespassing on Parcel C, or interfering with GAL's development and rights of quiet enjoyment;
7. Award Plaintiff its costs, disbursements, expert witness fees, and reasonable attorney's fees, pursuant to 42 U.S.C. § 1988, N.C. Gen. Stat. § 75-16.1, and other applicable law;
8. Award pre-judgment and post-judgment interest at the maximum rates allowable by law; and
9. Grant such other and further relief as the Court deems just, proper, and equitable.

## VIII. DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure and the Seventh Amendment to the United States Constitution, Plaintiff hereby demands a trial by jury on all issues so triable.

This 12th day of November, 2026.

Respectfully submitted,

THE FULLER LAW FIRM, P.C.

By: /s/ Trevor M. Fuller

Trevor M. Fuller (N.C. Bar No. 27044)
307 W. Tremont Avenue, Suite 200
Charlotte, North Carolina 28203
Telephone: (704) 659-5600
Facsimile: (704) 269-6101
Email: tmfuller@thefullerlawfirm.com

*Counsel for Plaintiff Gastonia Airline, LLC*